Mazin A. Sbaiti, Esq.
California Bar No. 275089
mas@sbaitilaw.com
SBAITI & COMPANY PLLC
1201 Elm St., Suite 4010
Dallas, TX 75270
T: (214) 432-2899
F: (214) 853-4367
*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VISTA CAPITAL INVESTMENTS, LLC, | § § § | Case No. '19CV1302 L    AGS |
| *Plaintiff*, | § § | **ORIGINAL COMPLAINT (BREACH OF CONTRACT)** |
| vs. | § § | |
| NATURAL SHRIMP, INC. | § § | |
| *Defendant*. | § § | |

Plaintiff Vista Capital Investments, LLC brings this Original Petition for breach of contract against Defendant Natural Shrimp, Inc., and would respectfully show the Court:

ORIGINAL COMPLAINT                                                Page 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.

## **SUMMARY OF THE DISPUTE**

1.     On January 12, 2017, Natural Shrimp granted Vista a Warrant to Purchase Shares of Common Stock, entitling Vista to purchase 70,000 shares of Natural Shrimp's stock at an agreed price of $0.60 per share (aggregate cost: $42,000).  Provisions in the Warrant state that the terms of the Warrant are subject to adjustment; for instance, Paragraph 5.3 states that if Natural Shrimp ever issues or grants another party a right to acquire its common stock at a price lower than $0.60 per share, then Natural Shrimp: (a) must immediately notify Vista, in writing, of this fact; and (b) agrees to allow Vista to "match" the more favorable per-share price granted to the third-party, thereby allowing Vista to acquire a greater adjusted number of shares.

2.     Natural Shrimp attempted to duplicitously evade these provisions, by issuing shares at $0.0026 per share to a third party, and never providing Vista the required written notice of this occurrence.

3.     However, Natural Shrimp disclosed the transaction in its dense public 10-Q filings with the SEC.  By scouring these filings in detail as they were issued, Vista learned of the more favorable stock issuance to the third-party, and on February 22, 2019, sent notice to Natural Shrimp exercising its Warrant to acquire

---

16,052,090 shares of Natural Shrimp common stock at $0.0026 per share.

4.     Natural Shrimp has unilaterally refused to honor this valid Notice of Exercise, thereby materially breaching the terms of the Warrant.  Natural Shrimp is therefore liable for breach of contract in an amount equal to the market value of the 16,052,090 shares on the date of breach (February 22, 2019)—a sum of over $7 million in direct economic damages.

5.     Under Paragraph 16 of the Warrant, Natural Shrimp is also liable to Vista for reasonable and necessary attorneys' costs and fees expended in this proceeding.

## II.

## PARTIES AND SERVICE

6.     Plaintiff Vista Capital Investments, LLC ("Vista" or "Plaintiff") is a California limited liability company with its principal place of business in Cardiff by the Sea, California.

7.     Defendant Natural Shrimp, Inc. ("Natural Shrimp" or "Defendant") is a Nevada corporation with its principal place of business in Dallas, Texas.  Natural Shrimp has agreed to accept service of the Complaint through its counsel, Robert Brookman of Lucosky Brookman, at rbrookman@lucbro.com.

1
2
3

# III.

## <u>JURISDICTION AND VENUE</u>

4
5
6
7
8

8.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 (diversity jurisdiction).  There is complete diversity of citizenship between Plaintiff and Defendant, and the value of the dispute or amount in controversy exceeds $75,000.

9
10
11
12
13

9.     Venue is proper in this Court under 28 U.S.C. § 1391 because the parties agreed to San Diego County as proper venue, and a substantial part of the events or omissions giving rise to the claim occurred in San Diego County.

14
15
16
17
18
19
20
21
22
23

10.     Personal jurisdiction over the Defendant is proper because Defendant has purposefully availed itself of the State of California, the California market, California businesses, and the California laws by contracting with California entities, agreeing that some or all of the promissory notes would reside in California, agreeing to repay California-based debt, doing business within California, and agreeing to be sued in California and to submit to the jurisdiction of this Court under the terms of the Warrant at issue in this litigation.

24
25
26
27
28

ORIGINAL COMPLAINT                                                                           Page 4

### IV.

### FACTUAL ALLEGATIONS

**A.**   **Vista and Natural Shrimp Enter into the Warrant, Which Contains Price-Matching Provisions, and Provides a Sliding Scale Detailing How Much of Natural Shrimp's Common Stock Vista Can Acquire for $42,000.**

11.   Vista is a venture capital investment company.

12.   In or before January 2017, Defendant Natural Shrimp approached Vista to enter into certain financial transactions.

13.   Natural Shrimp is a corporation which is researching and developing a high density, self-contained aquaculture system, not dependent on ocean water, to provide fresh shrimp to retail customers every week, 52 weeks a year.

14.   Vista and Natural Shrimp entered into a Securities Purchase Agreement dated January 23, 2017.

15.   Pursuant to that agreement, Natural Shrimp also granted Vista the Warrant to Purchase Common Stock ("Warrant") which is the subject of this dispute.

16.   The Warrant allowed Vista to purchase 70,000 shares of Natural Shrimp's common stock at an initial Exercise Price of $0.60 per share (yielding a total initial Aggregate Exercise Price of $42,000 for all the shares).

17.   A true and correct copy of the Warrant is attached hereto as **Exhibit A**.

18.     However, the Warrant also contains language, in Paragraph 5.3, stating that under certain conditions, "the Exercise Price shall be reduced . . . and the number of Warrant Shares issuable hereunder shall be increased such that the Aggregate Exercise Price Payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the Aggregate Exercise Price Prior to such adjustment."  *See* Exhibit A, ¶ 5.3.

19.     In other words, the number of shares Vista was able to acquire was on a sliding scale that adjusted alongside the price at which it could acquire those shares under the terms of the Warrant.  If the Exercise Price *decreased*, "the number of Warrant Shares issuable hereunder shall be *increased*." *Id.*  The increase would be such that the new total number of shares acquired, multiplied by the price at which they were each acquired, would equal the same Aggregate Exercise Price payable as before ($42,000).  *Id.*

20.     To illustrate by way of example: if Vista was entitled to acquire 70,000 shares at $0.60 per share, but the price at which VCI could acquire the shares (under the terms of the Warrant) was reduced by half, to $0.30 per share, then the number of shares Vista could acquire would simply be doubled, to 140,000 shares, because this would yield the same, $42,000 Aggregate Exercise Price.

21.     Paragraph 5.3 of the Warrant contains the following price-matching provisions (emphasis added):

> If **[Natural Shrimp]** or any Subsidiary thereof, as applicable, at any time while this Warrant is outstanding, **shall sell or grant** any option to purchase, or sell or grant any right to re-price, **or otherwise dispose of or issue** (or announce any offer, sale, grant or any option to purchase or other disposition) **any Common Stock** or Common Stock Equivalents entitling any Person to acquire shares of Common Stock, **at an effective price per share less than the then Exercise Price (such lower price, the 'Base Share Price'** and such issuances collectively, a 'Dilutive Issuance') . . . **then the Exercise Price shall he reduced** and only reduced **to equal the Base Share Price** . . .

**Exhibit A**, ¶ 5.3.

22.     The relevant language highlighted in bold above, taken in isolation for the convenience of the Court, reads as follows:

> If [Natural Shrimp]. . . shall sell or grant . . . or otherwise dispose of or issue . . . any Common Stock . . . at an effective price per share less than the then Exercise Price (such lower price, the 'Base Share Price' . . . ) . . . then the Exercise Price shall be reduced . . . to equal the Base Share Price . . . *Id.*

23.     In other words, this is a simple price-matching provision, stating that if Natural Shrimp ever issues, otherwise transfers or grants any third party the right to acquire shares at a per-share price lower than the $0.60/share price granted to Vista under the Warrant, Natural Shrimp agrees to allow Vista to "match" the new, more favorable price granted to the third party.

24.     In order to effectuate these provisions, Paragraph 5.3 also contains the following notice provision, requiring Natural Shrimp to disclose to Vista, in writing, every instance it issues stock to a third party at a more favorable price that would trigger the price-matching provisions quoted above:

ORIGINAL COMPLAINT                                           Page 7

The Company shall notify the Holder in writing, no later than the Trading Day following the issuance of any Common Stock or Common Stock Equivalents subject to this Section 5.3, indicating therein the applicable issuance price, or applicable reset price, exchange price, conversion price and other pricing terms (such notice the 'Dilutive Issuance Notice'). *Id.*

**B.** **Natural Shrimp Breaches Its Obligations.**

25.    Notwithstanding the notice requirement quoted above, Natural Shrimp did not disclose its more-favorable stock transactions with third parties to Vista.

26.    Instead, Vista learned, through a public 10-Q filing with the SEC, that Natural Shrimp had made its common stock available to a third party at $0.0026 per share – a price far more favorable than the $0.60 initial Exercise Price Natural Shrimp granted to Vista.

27.    Accordingly, pursuant to the Warrant's Paragraph 5.3, Vista automatically had the right to "match" the $0.0026 per-share price and to acquire a higher number of Natural Shrimp's shares.

28.    On February 22, 2019, Vista sent Natural Shrimp a letter attaching a Notice of Exercise of Warrant (the "Exercise Notice"), in the same form attached as an exhibit to the Warrant, electing to exercise its right to acquire Natural Shrimp's common stock at $0.0026 per share.

29.    A true and correct copy of the letter and Exercise Notice is attached hereto as **Exhibit B**.

ORIGINAL COMPLAINT                                          Page 8

30.     The Exercise Notice elected to exercise the Warrant through what is called a "cashless exercise" (which is expressly permitted by the terms of the Warrant).

31.     The concept behind a "cashless exercise" is relatively simple: a Warrant entitles the holder to acquire a certain number of shares at an agreed price—for instance, on the date of the Notice of Exercise, VCI's Warrant entitled it to acquire 16,153,846 shares at the Adjusted Exercise Price of $0.0026 per share (since this was the lowest price Natural Shrimp had offered by that point to a third party, and since this number of shares would yield a payable Aggregate Exercise Price of $42,000).

32.     However, instead of actually paying $42,000 in cash to acquire the shares, under the "cashless exercise" provisions of the Warrant, Vista had the option to give up a portion of the shares it was entitled to, in order to use these shares to pay for the other shares it was acquiring—essentially, trading some of the shares it could acquire back to Natural Shrimp in lieu of paying Natural Shrimp $42,000 in cash.

33.     Vista could thereby use the terms of the Warrant to acquire the remaining shares without transferring any cash to Natural Shrimp (hence why it is called a "cashless exercise").

34.   The Warrant (**Exhibit A**), at page 2, contains the following formula for calculating how many shares Vista could acquire if it elected a cashless exercise of the Warrant:

$$X = \frac{Y(A-B)}{A}$$

Where   X =   the number of Warrant Shares to be issued to Holder.

Y =   the number of Warrant Shares that the Holder elects to purchase under this Warrant (at the date of such calculation).

A =   the Market Price (at the date of such calculation).

B =   Exercise Price (as adjusted to the date of such calculation).

35.   Performing this calculation based on the actual number of shares, and market value of those shares on February 22, 2019, yields **16,052,090** as the number of shares Vista was permitted to acquire through a cashless exercise.

36.   These shares had a market value of $0.4445 per share on February 22, 2019, and therefore an aggregate market value of **$7,135,154** for the 16,052,090 shares.

37.   Natural Shrimp unilaterally refused to honor the Exercise Notice, thereby causing Vista $7,135,154 in direct economic damages.

**C.   Natural Shrimp Countersues Vista and Commits A Fraud Upon This Court.**

38.     Vista originally sued Natural Shrimp under the Warrant on April 30, 2019 in the 101st Texas District Court of Dallas County, Texas (Cause No. DC-19-06160).

39.     Natural Shrimp responded by requesting an extension of time to answer.  During the extension, Natural Shrimp counter-sued Vista in this Court, in Cause No. 3:19-cv-01239-WQH-BGS (the "Countersuit").

40.     In its Countersuit, Natural Shrimp sued Vista and sued its owner, David Clark, personally for fraud and rescission, alleging that Vista and its owner "seek to exercise a fraudulent 'exploding warrant' to purchase more than forty-five (45) times the number of shares that Defendants led Natural Shrimp to believe was even possible and at a price two-hundred-and-thirty (230) times lower than the price floor that Defendants led Natural Shrimp to believe was in place." Countersuit Complaint ¶ 1.  The Countersuit states that Natural Shrimp did not know it was entering into a Warrant with price-adjustment provisions that could dramatically alter the number of shares Vista was entitled to acquire. *Id.*

41.     Natural Shrimp thus alleges that Vista committed a fraud by entering into a Warrant with price-adjusting provisions as detailed above, and exercising those provisions exactly as written.

42.     Natural Shrimp goes on to allege that: "Vista, through [its owner and manager] Clark, preyed upon Natural Shrimp—a company unfamiliar with the

complicated and predatory nature of the venture capitalist industry," purportedly by tricking Natural Shrimp into signing the Warrant with its price-adjustment provisions. *Id.* ¶ 3.

43.     Not only is Natural Shrimp's Countersuit an improper attempt to insert itself as the plaintiff in this proceeding—after Vista had already initiated legal action—*it is also based upon the demonstrably fraudulent representation that Natural Shrimp did not understand the price-adjustment provisions in the Warrant at the time it signed the Warrant.*

44.     Natural Shrimp's sworn public filings with the SEC completely belie the allegations it made to this Court, by making abundantly clear that Natural Shrimp *understands, and understood, the price-adjustment provisions of the Warrant*.

45.     Indeed, in its most recent public 10-K filing with the SEC for the fiscal year ended March 31, 2019, relevant excerpts of which are attached hereto as **Exhibit C,[1] Natural Shrimp disclosed that it has entered into countless warrants with sliding-scale, price-matching and price-adjustment provisions just like those contained in Vista's Warrant (Exhibit A).  The filing contains countless admissions that Natural Shrimp understands perfectly well how these provisions function and, indeed, that it routinely honors such provisions in its**

---

[1] The entire 10-K filing is roughly 600 pages long.

**many warrants.**  Natural Shrimp is a sophisticated party that understands perfectly well how these price-adjustment provisions function.

46.    <u>Natural Shrimp's SEC filing details at least fifteen (15) transactions that include such provisions, all of which were understood by Natural Shrimp (as Natural Shrimp itself details, repeatedly, how these provisions function in its 10-K filing)</u>, many of which were specifically honored by Natural Shrimp, through adjustments to the number of shares that were issued to the warrant holders.  Indeed, Natural Shrimp understands price-adjustment provisions such as those it signed in the Warrant attached as **Exhibit A** so well that it even knows that a provision "which adjusts for any future dilutive issuances" results in a warrant being "classified out of equity as a warrant liability."  *See* **Exhibit C**.

47.    In **Exhibit C**, Natural Shrimp disclosed and described each of the following transactions to the SEC, in the following language (emphasis added):

> On January 23, 2017, the Company [*i.e.* Natural Shrimp] entered into a Securities Purchase Agreement and issued a Convertible Note in the original principal amount of $262,500 to an accredited investor, along with a Warrant to purchase 350,000 shares of the Company's common stock. . . The warrants are exercisable over a period of five (5) years at an exercise price of $0.60, **subject to adjustment. The exercise price was adjusted to $0.15, and the warrants issued increased to 280,000, upon a warrant issuance related to a new convertible debenture on September 11, 2017**.

> On July 31, 2017, the Company entered into a 5% Securities Purchase Agreement with an accredited investor. The agreement calls for the purchase of up to $135,000 in convertible debentures. . . The

convertible debentures are convertible into shares of the Company's common stock at a conversion price of sixty percent (60%) of the lowest trading price over the 25 trading days preceding the date of conversion, subject to adjustment . . . The Company issued a warrant to purchase 75,000 shares of the Company's common stock with the first closing, with an exercise price of $0.60. **The warrant has an anti-dilution provision for future issuances, whereby the exercise price would reset. The exercise price was adjusted to $0.15, and the number of warrants issued to 300,000, upon a warrant issuance related to a new convertible debenture on September 11, 2017.**

On August 28, 2017, the Company entered into a 12% convertible promissory note with an accredited investor in the principal amount of $110,000. . . The note is convertible into shares of the Company's common stock at a variable conversion rate. . . In connection with the note, the Company issued 50,000 warrants, exercisable at $0.20, with a five-year term. **The exercise price is adjustable upon certain events,** as set forth in the agreement, **including for future dilutive issuance. The exercise price was adjusted to $0.15 and the warrants issued increased to 66,667, upon a warrant issuance related to a new convertible debenture on September 11, 2017.**

On September 11, 2017, the Company entered into a 12% convertible promissory note with an accredited investor in the principal amount of $146,000. . . The note is convertible into shares of the Company's common stock at a variable conversion rate . . . **In connection with the note, the Company issued 243,333 warrants**, exercisable at $0.15, with a five-year term. **The exercise price is adjustable upon certain events, as set forth in the agreement, including for future dilutive issuance.**

On June 5, 2018, the Company entered into a convertible note for the principal amount of $125,000 . . . **The conversion price is adjusted upon a future dilutive issuance** . . .

On September 14, 2018, the Company entered into a 12% convertible promissory note for $112,500. . . **The conversion price shall be adjusted upon subsequent sales of securities at a price lower than the original conversion price**. . .

On January 23, 2017, the Company entered into a Securities Purchase Agreement . . . with an original principal amount of $262,500 . . . **the conversion price**, as well as other terms including interest rates, original issue discounts, warrant coverage, **adjusts if any future financings have more favorable terms**. . .

**The [related] warrants have an original exercise price of $0.60, which adjusts for any future dilutive issuances. As a result of the dilutive issuance adjustment provision, the warrants have been classified out of equity as a warrant liability.**

On July 31, 2017, the Company entered into a 5% Securities Purchase Agreement. The agreement calls for the purchase of up to $135,000 in convertible debentures. . . [with] **an adjustment to occur upon subsequent sales of securities at a price lower than the original conversion price**. . .

On August 28, 2017, the Company entered into a 12% convertible promissory note for $110,000. . . **The conversion price shall be adjusted upon subsequent sales of securities at a price lower than the original conversion price**. . .

In connection with the note, the Company issued 50,000 warrants, exercisable at $0.20, with a five-year term. **The exercise price is adjustable upon certain events, as set forth in the agreement, including for future dilutive issuance. The exercise price was adjusted to $0.15 and the warrants outstanding increased to 66,667, upon a warrant issuance related to a new convertible debenture on September 11, 2017.**

On September 11, 2017, the Company entered into a 12% convertible promissory note for $146,000. . . In connection with the note, the Company issued 243,333 warrants, exercisable at $0.15, with a five-year term. **The exercise price is adjustable upon certain events, as set forth in the agreement, including for future dilutive issuance** . . .

On September 12, 2017, the Company entered into a 12% convertible promissory note for principal amount of $96,500 . . . **the conversion**

**price adjusts . . . upon any future financings have more favorable terms** [sic].

On June 5, 2018, the Company entered into a convertible note for the principal amount of $125,000 . . . **The conversion price is adjusted upon a future dilutive issuance**. . .

On September 14, 2018, the Company entered into a 12% convertible promissory note for $112,500. . . **The conversion price shall be adjusted upon subsequent sales of securities at a price lower than the original conversion price.**

48.     Indeed, Natural Shrimp's SEC 10-K filing states that Natural Shrimp *"has granted approximately 424,000 warrants (prior to adjustments based on subsequent dilutive issuances)* in connection with convertible debentures" (emphasis added).

49.     Accordingly, Natural Shrimp has apparently entered into countless warrants containing provisions materially identical to **Exhibit A**—and understands perfectly well how the price-adjustment provisions in such warrants function.  It has honored such provisions in countless instances, including those disclosed in its 10-K filing.

50.     Vista brings the issue of the Countersuit to the Court's attention to preempt any attempt by Natural Shrimp to argue that the Countersuit should proceed (with Natural Shrimp as the plaintiff) in lieu of this proceeding brought by Vista. The Countersuit should be dismissed, and this proceeding move forward, because:

(a) Natural Shrimp's Countersuit is not the first-filed action (that was Vista's suit in Texas); (b) the Countersuit is a transparent attempt to substitute Natural Shrimp as the plaintiff in Vista's place, by seeking a declaration of non-liability as to the claim Vista originally brought against Natural Shrimp; and (c) the Countersuit is also a sanctionable, frivolous lawsuit that violates Fed. R. Civ. P. 11.

## V.

### SOLE CAUSE OF ACTION:
### BREACH OF CONTRACT

51.  Plaintiff incorporates all preceding paragraphs as though restated at length herein.

52.  Plaintiff brings this cause of action against Defendant for breach of contract.

53.  The Warrant is a valid contract between Plaintiff and Defendant.

54.  All conditions precedent for Plaintiff's exercise of its rights under the Warrant have occurred, and Plaintiff sent a valid notice of exercise to Defendant.

55.  Plaintiff has performed all of its obligations under the Warrant.

56.  By unilaterally refusing to honor the notice of exercise, Defendant has materially breached the terms of the Warrant, directly and proximately causing Plaintiff economic damages in the amount of $7,135,154.

ORIGINAL COMPLAINT                                          Page 17

57.   Plaintiff also seeks its reasonable and necessary attorneys' fees and costs under Paragraph 16 of the Warrant, as the prevailing party in this dispute.

## VI.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff Vista Capital Investments, LLC requests the following relief:

(i)    A judgment against Defendant Natural Shrimp, Inc. in the amount of $7,135,154, plus pre-judgment and post-judgment interest to the greatest extent permitted by law;

(ii)   Its reasonable and necessary attorneys' fees and costs; and

(iii)  All other general relief, whether at law or in equity, to which Plaintiff may show itself justly entitled.

ORIGINAL COMPLAINT                                                                 Page 18

1   Dated:  July 12, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti
California Bar No. 275089
mas@sbaitilaw.com
Dallas Renaissance Tower
1201 Elm St., Suite 4010
Dallas, TX  75270
T: (214) 432-2899
F: (214) 853-4367

**Attorney for Plaintiff**

---

ORIGINAL COMPLAINT

Page 19